Good morning. Daniel P. Hamlin for the petitioners John Hongma and Duan Hong. In this case, petitioners are seeking review of the Executive Office of Immigration Review's determination that Ms. Ma did not qualify for asylum and related relief from removal as a person who qualifies as a refugee due to the fact that she had undergone a forced abortion in China and she is a person who fears persecution for resistance to coercive family planning practices in the People's Republic of China. She came to the United States in 1996. Correct. Didn't get around to filing her asylum application until 1999. That's correct. And there's a one-year limit. There's a one-year limit with two very distinct exceptions. The one at issue here is whether there were extraordinary circumstances and under the applicable regulations to the person files within a reasonable time of the expiration of their non-immigrant status, then they are exempted from the one-year filing limitation. And the IJ found that it was an unreasonable delay? The IJ made several erroneous rulings of law regarding her prior status without regard to the pre-hearing brief prior counsel filed in the case, without regard to State Department regulations, and based largely in part on an uncontested investigative report that was prepared for the litigation. However, he denied the petitioner's counsel the right to cross-examine the preparer of the document. And if you... Well, she came here on a visa for work. A visitor for business. Right. Not to work here. Right. I understand. But then she quit working for the firm that was sponsoring her. She took a leave of absence and then she changed her status to student, so she was no longer working for... Well, it wasn't seamless. There was a period of time after she had quit the job and then sometime later applied for the student visa. There was a period, I think, of a few months where that is the case. And why didn't she apply for asylum then? Well, she did file for an B-1 status, which was granted, and there is permissible basis to extend B-1 status in order to do research on an individual's behalf. The judge misconstrued the requirements for a B-1 visitor for business visa. You do not need to be employed by a particular company. He was looking at the fact that her passport biographical data page said employee. Well, Do we have jurisdiction, counsel, to look into this portion of your argument? The I.J. made a factual finding, and under the code, we don't have jurisdiction to gainsay what the I.J. said, do we? Well, we do under the Hushev case, which came out last month, and counsel for the government was kind enough to provide us with supplemental authority in briefing. And in that, they've retreated from their earlier position that there is no jurisdiction to review this determination. However, they're trying to say because the I.J. made a factual determination, then really we can't review it. Who decided that case, please? The Ninth Circuit Court of Appeals, but I'm not sure which. I've heard of them. I don't have, I do actually, if I can. But counsel, that case involves where the effects are undisputed, where there is no dispute about the facts. Here, I would argue that the facts as presented are not in dispute. The facts as interpreted by the immigration judge are in dispute, only because he's misrepresented what facts were used at trial, and in fact not allowed the petitioners to present legal authority for their positions, which if the judge simply says, well, these are the facts, and he's wrong, is this court under Hushev barred from review? A factual finding, yes. If a factual finding is made, if the parties dispute a fact, and the immigration judge makes a decision, decides one way or the other which version of the facts he or she believes, right or wrong, we cannot review that. But these are not facts we're disputing. They're legal determinations. Was she, in fact, not in valid B-1 status? That's a legal determination. The only facts that were presented that this court should be looking at, did she have her valid visa status? But how do you determine that? You don't determine that in the vacuum. You determine that based on the facts presented. Okay. And she submitted her admission stamps, her I-94s. She submitted her I-20s from the school, all of which showed she was admitted for a proper purpose seamlessly through the time she filed her application. She only dropped out of student status after she had filed the application. And if there are errors of law and the court has jurisdiction to review this, it's very hard to divorce the facts from the legal issues, because the judge basically says, well, this is how I see the facts. But this is not in accord with what the transcript shows. Did the government agree with your version of the facts as to whether she failed to maintain her nonimmigrant status? Did the government agree with your version of the facts? No. They're arguing that she did not maintain her nonimmigrant status. But I think you have to look at the law, because an immigration judge, even though the USCIS grants someone status, and they're charging her, putting her in removal proceedings based on the fact that she what? She no longer remained a student. But you're not asking us to make a decision of law or deal with a constitutional issue here, are you? You're asking us to reevaluate the factual determinations of the IJ about when this person was here, how long she had to make the filing, when she actually made the filing. Those are factual determinations, aren't they? No. There's two things. Constitutionally, I think there is a problem with the judge's examination of... You think it's a Sixth Amendment violation? Where is that in the pleadings? A due process violation. I think that was in my brief. Well, if it's not in the brief, it's not in this court. So I don't remember seeing anything about due process as to this element of the claim. I don't have my brief. Let's assume for a moment you don't have a constitutional issue. How do you morph this factual determination into a question of law? Because on top of these basic facts are she came in on a B-1 visa. She extended that B-1 visa and she changed her status to an F-1 visa. These were all approved by the government. The documentation was provided. Then an immigration judge comes up and says, well, you know what I think? I think you had to be working for that company to be in valid B-1 status. Well, under the Foreign Affairs Manual, it does not say that. But that's a factual determination, is it not, to whether she's working or not working? But it's an irrelevant inquiry when the Foreign Affairs Manual says you can be issued a B-1 visa for the following purposes, which include conducting individual research. Counsel, by your lights, every factual determination, what if she says my B-1 was extended and they say no, it was denied? There's a factual dispute, which would not be reviewable. Here, both parties agree her B-1 status was approved and her extension was approved and her change of status to student. What they're disputing is coming in later and saying, well, we think applying these laws that you technically were out of status. And it pulls the rug right out from under the HUSHEV ruling. Counsel, your due process argument, which is on page 11 of your brief, you talk about the immigration judge failed to follow the appropriate regulations, right? Correct. So you did not really couch it in terms of whether or not there's a disputed question of fact, did you? If the language is not there, apparently I did not. But the HUSHEV case came out much later. This issue was briefed in 2004, I believe. So perhaps supplemental briefing would have been warranted, but the case was only decided a month ago. You've got about a minute and change. Did you want to reserve some time? If I could, thank you. Good morning, Your Honors. May it please the Court. Ben Zeitlin on behalf of the Attorney General. The following petition for review should be denied because the evidence does not compel a contrary conclusion to that of the agency that Ms. Ma was not credible with respect to her withholding of removal claim. A review of the record... Before you get there, Counsel, what about the denial of asylum and that portion in terms of whether the asylum application was time-barred? Do you agree with opposing counsel that we have jurisdiction to review that? As indicated in our 28-J letter, the government does not agree with Petitioner's arguments for a number of reasons, as I'll get into. Petitioner argues that, in his brief, that the asylum claim should be rejected. He makes two arguments in his briefing materials for why she has demonstrated extraordinary circumstances, and the government contests that both of these should, in fact, be rejected. The first argument is because Petitioner argues that she maintained lawful non-immigrant status throughout the course of her time while she was in the United States. A brief overview of the timeline while she was in America reveals the contrary to that. Do we even get to the merits of that, though, Counsel? I do not believe there is a reason to get to the merits of that. Why not? For a number of reasons. If you want to look at the Husiev decision, there is clearly a dispute of fact. There is... What fact is in dispute exactly? Not legal conclusion, but what fact is in dispute? The fact in dispute is whether or not Ms. Ma was formally employed during the time... Does that matter? He said, Mr. Allen said that it doesn't matter if she's employed. She can be on her own doing research on her own. So does it matter whether she's employed or not? Well, it matters because it's a question of fact. No, no, it can be a question of fact, but it may not matter. Now, I'm asking you, does that fact matter? Well, the government would contest that it does matter. Why does it matter? He says you don't have to be employed to get one of these business visas. If you don't have to be employed, then it doesn't matter if she's employed or not employed, whether it's disputed or not disputed. If it doesn't matter, it doesn't matter. You have to be employed to get a business visa. Her business visa was contingent on her being sponsored by her employer when she came to this country. So if she's not employed under the terms of the visa, she's not, she can't get the visa? That is correct. The immigration judge and the agency found when she applied for asylum looking back at her B-1 visa that she fell out of status because she was no longer employed by the company which sponsored her, I believe. You're telling us that her visa was contingent on her being employed. That is correct. And she, there was a dispute as to the facts of whether or not she was still employed. Ms. Ma argued that in her brief on page 11 and also during her merits hearing that although she was, that she was not employed, that her company allowed her to study English and also allowed her to work on a non-salary basis to make phone calls and on a sort of contingent basis. The government disputed that and said, no, you are no longer employed at all. And that was a dispute of fact. Where will we find the contingency that she has to be employed? Where will we find that in the record? That was based, that was in the immigration judge's ruling and that was in the Well, that may be his ruling, but where is it on the visa that says you have to be employed? You can't be self-employed. That was in the, I believe that was on page, in the report issued by the immigration judge and that was issued by the intelligence officer, Timothy Bowman, on page, I believe it was on page 30. That's somebody's interpretation of the visa? He was the intelligence officer on page 314. What regulation was he relying on to make that? Sure. He relies on a number of regulations. If I can just look at it for one moment. It says, her B-1 status was dependent on her being in the U.S. temporarily for business, as defined in INA 101A15B and HCFR 214.2B1. Where does it say it's contingent on her being employed? Well, it says, consequently, her status terminated when she was terminated from her employment because she was no longer in any business in the U.S. Well, she says she was self-employed. She was doing research. You just told us a minute ago, it's contingent on her being employed. And what you just read us is that she's no longer working there, but Well, there's, Your Honor, I believe that this regulation has, that was submitted by the intelligence officer specifies that, I mean, there was also no factual evidence that she was self-employed. I mean, that Well, she said she was doing research on her own, didn't she? There was no evidence that she was doing research on her own. She said she was going to, when she had time, she was conducting some phone calls, but she Well, that's her story. That's her evidence. Well, the immigration judge also found her to be not credible as the reason he denied made an alternative finding of denial of her asylum claim and denial of her withholding of removal claim. Well, now we're getting into whether the facts are disputed. She says, I was self-employed. The IJ says, I don't believe you. That's a different kettle of fish. That's correct. Okay. What about her testimony with respect to withholding and the cat film? Well, there were numerous inconsistencies within her asylum claim or with her withholding of removal claim. Most specifically was the fact that there was a discrepancy between her husband's asylum application and her own testimony. Ms. Ma stated during her testimony that she did not have, that she had received a permit to have one of her children, to have a child within the United States. Whereas, and that, but her husband said that she had never received a permit to have this child. And that was the main discrepancy, and that was the heart of her asylum claim. That she could not go back to China because of this allegation that she, because she would suffer persecution based on the birth of this child that she had received in the United States. Is that, normally, this issue of whether she had a permit or didn't have a permit would not be all that important in the scheme. It's the government's position, I gather, that it is important and is the basis for rejection of this claim. Because the heart of her claim is if she goes back she'd be forced to have an abortion. Is that the government's position? Well, the government's position is it's a major discrepancy. I mean, if her claim is that she would go back to China and suffer persecution based on the birth of this child in the United States. But then, in fact, she claims that she received a permit from the Chinese authority to have this child. But there's a second child born while she was here, right? Then there was another child born while she was here. And wasn't there some dispute about whether there was a permit for that? I'm not sure that there was a dispute about that. Okay. It doesn't seem that there was. You know, one issue issued during, you know, the briefing materials is that Petitioner's Counsel alleges that Ms. Ma's husband wasn't afforded an opportunity to rectify some of the inconsistencies during his – within his asylum application. However, reading the transcript of the merits hearing, it was, in fact, Ms. Ma's own attorney who refused to allow Ms. Ma's husband the opportunity to testify before the immigration judge. He actually said to him, because there are all these inconsistencies within the asylum application, I'm not going to allow you – you know, I would prefer that you not testify at this time because I don't – there's too much confusion in the asylum application, too much confusion between my office that helps you prepare the asylum application. So I'd rather not have you testify and create more confusion. That's on the record. That's on the record. And I believe it's on page 205 of the administrative record. And that created – and that's one of the arguments raised in the brief, that the immigration judge, in fact, prevented Ms. Ma's husband from testifying, but it's not true. And another argument raised is that the immigration judge prevented the preparer, the intelligence officer Timothy Goldman, from testifying, from being cross-examined about the document he prepared, that Ms. Ma was out of status. But, again, that argument is also not true. Petitioner's attorney did not object to the submission of that document and, in fact, never asked to cross-examine the preparer of that document. And it's unfair now in the briefing of this case to say, well, we should have had an opportunity to cross-examine Timothy Goldman during the merits hearing when they never asked for an opportunity to cross-examine him. And it's unfair to say that Ms. Ma's husband should have had the opportunity to present evidence and to present testimony when, in fact, his own attorney recommended that he not present evidence. Roberts. Thank you very much, Mr. Zayden. Zayden. Thank you very much. Mr. Hanlon, you get the last word. Thank you. I'd like to point out, with respect to the rule of law with regard to the validity of the B-1 visa, the Court can take judicial notice of 22 CFR 41.31, notes 1 through 8, which delineates several different valid reasons for a person to be issued a B-1 visa, including independent research. And, secondly ---- Did the judge find, as a matter of fact, that she wasn't really doing independent research? The judge, I don't believe ---- he just said, I don't believe her. But he didn't have any contrary evidence that she was not, in fact, doing what she said she had been doing. Well, you don't have to have contrary evidence not to believe somebody. True, but I think the transcript exposes, other than the one discrepancy that counsel has pointed out, that the judge basically was very speculative. I mean, if I buy your argument that she doesn't have to be employed, she can be doing independent research. Yes. If he doesn't believe that she's really doing independent research, then your goose is cooked, isn't it? Except for the fact that he didn't consider any of the evidence. Well, you heard her testify, you heard her story, and he doesn't believe it. It brings up some due process concerns, I would contend. In this record, it's very clear that he was, other than the one specific inconsistency counsel has pointed to, which I believe does not go to the heart of the claim, if we have more time, he was concocting what he called inconsistencies out of thin air. Thank you very much, Mr. Hanlon. Mr. Zeitlin, thank you. Case to start. You just submitted.
judges: Silverman, Rawlinson, M. Smith